UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ORLANDO DONES-VARGAS,<br><br>Defendant. | 4:17-CR-40086-KES<br><br>ORDER DENYING MOTION FOR COMPASSIONATE RELEASE |

Defendant, Orlando Dones-Vargas, moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 140. Plaintiff, United States of America, opposes the motion. Docket 143. For the following reasons, Defendant's motion for compassionate release is denied.

## BACKGROUND

On January 30, 2018, a jury found Dones-Vargas guilty of conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1). Docket 66. On July 16, 2018, the court sentenced Dones-Vargas to 235 months in custody. Docket 114. His projected release date is July 18, 2034. Federal Bureau of Prisons, *Find an Inmate*, Inmate Locator, https://www.bop.gov/inmateloc/ (last visited May 31, 2023).

Dones-Vargas is incarcerated at Federal Correctional Institution Oxford (FCI Oxford), in Oxford, Wisconsin, a medium security federal correctional institution. *FCI Oxford*, Federal Bureau of Prisons,

https://www.bop.gov/locations/institutions/oxf/index.jsp (last visited July 11, 2023). The total population at FCI Oxford is 1,166 persons. *Id.*

In support of his motion, Dones-Vargas argues his medical conditions, the COVID-19 pandemic, and his family circumstances warrant release from custody under the First Step Act (FSA). Docket 140 at 4-5. Dones-Vargas submitted an Inmate Request to Staff form to Matthew Marske, warden of the Federal Bureau of Prisons (BOP) on August 4, 2021, requesting compassionate release due to COVID-19 and his family circumstances. Docket 142 at 61. On August 16, 2021, Warden Marske denied Dones-Vargas's request. *Id.* at 62. Dones-Vargas filed a second Inmate Request to Staff form requesting compassionate release on July 23, 2022. Docket 140-1 at 3. On August 15, 2022, Warden R.D. Keyes denied Dones-Vargas's request. *Id.* at 4. On November 21, 2022, Dones-Vargas filed a pro se motion with the court seeking release under the FSA. Docket 140.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). In 2018, Congress passed the FSA. Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants in certain circumstances to file motions with the court seeking compassionate release. *Id.* Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a reduction in sentence

must take into consideration the 18 U.S.C. § 3553(a) sentencing factors and be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement, which was adopted before the FSA was passed, requires both "extraordinary and compelling reasons" to warrant a sentence reduction and that the defendant not pose a danger to the safety of others. USSG § 1B1.13(1)-(2) (Nov. 2018). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Dones-Vargas argues that the global COVID-19 pandemic, his health conditions, and his family circumstances satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 140 at 4. He asks this court to grant his motion for compassionate release. *Id.*

**I. Dones-Vargas's Administrative Exhaustion Requirement is Satisfied.**

Previously, only the BOP Director had the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

On August 4, 2021, Dones-Vargas submitted an Inmate Request to Staff Member form requesting compassionate release due to his medical conditions, the COVID-19 pandemic, and his family circumstances. Docket 142 at 61. On July 23, 2022, he submitted a second Inmate Request to Staff Member form requesting compassionate release for the same reasons. Docket 140-1 at 3. Both of these requests were denied. *Id.* at 4; Docket 142 at 62. On November 21, 2022, Dones-Vargas then filed a pro se motion with the court seeking relief under the FSA. Docket 140 at 1. Because Dones-Vargas's requests were denied by a warden, Dones-Vargas has satisfied the administrative exhaustion requirement, and the court will review the matter on the merits.

**II. Dones-Vargas Has Not Shown Extraordinary and Compelling Reasons.**

The Sentencing Commission was directed by Congress to describe what "should be considered extraordinary and compelling reasons" for compassionate release and fashion "the criteria to be applied and a list of specific examples." *See* 28 U.S.C. § 994(t). The Sentencing Commission did so by limiting "extraordinary and compelling reasons" to three categories. USSG § 1B1.13, cmt. n.1(A)-(C). The three categories pertain to a defendant's (1) serious physical medical condition or cognitive impairment, terminal illness, or deterioration of one's physical or mental health because of the aging process, (2) advanced age and deteriorating health in combination with the amount of time served, and (3) compelling family circumstances. *Id.* A fourth catch-all category also exists for an "extraordinary and compelling reason other

4

than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the BOP. USSG § 1B1.13, cmt. n.1(D).

The court has detailed the governing law and the analysis it uses when confronted with a compassionate release motion in many previous orders. *E.g., United States v. Shields*, 3:07-CR-30106-01, 2021 WL 765001, at *2-3 (D.S.D. Feb. 26, 2021); *United States v. Muhs*, 4:19-CR-40023-02, 2021 WL 534517, at *2-3 (D.S.D. Feb. 12, 2021); *United States v. Adame*, 4:18-CR-40117-05, 2020 WL 7212096, at *2-3 (D.S.D. Dec. 7, 2020); *United States v. Nyuon*, 4:12-CR-40017-01, 2020 WL 7029873, at *2-3 (D.S.D. Nov. 30, 2020). The court has assumed the policy statements still apply to compassionate release motions brought under the FSA and utilizes USSG § 1B.13, Notes 1(A)-(D) to guide its analysis. *See, e.g., Muhs*, 2021 WL 534517, at *3.

Dones-Vargas contends the global COVID-19 pandemic, his health conditions, and his family circumstances satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 140 at 5. Therefore, the court will analyze his circumstances under the medical conditions category, USSG § 1B1.13 Note 1(A) and the family circumstances category, USSG § 1B1.13 Note 1(C).

Assuming the court's discretion to consider compassionate release is at least as broad as the outdated policy statement of the Sentencing Commission, Dones-Vargas has failed to show that his reasons for release rise to the level of "extraordinary and compelling" circumstances justifying a reduction in sentence.

**A. Medical Conditions Category, Note 1(A)**

As relevant here, the medical conditions category applies when the defendant is suffering from a serious physical or medical condition that substantially diminishes his ability to provide self-care within a correctional facility and from which he is not expected to recover. USSG § 1B1.13 cmt. n.1(A)(ii).[1]

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. The Centers for Disease Control and Prevention (CDC) occasionally updates its understanding of these risks. *People with Certain Medical Conditions,* Ctrs. for Disease Control & Prevention (May 11, 2023), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The CDC states individuals with the following conditions are more likely to become very sick with COVID-19: cancer or having a history of cancer, chronic kidney disease, chronic liver disease (such as alcohol-related liver disease, non-alcoholic fatty liver disease, autoimmune hepatitis, and cirrhosis), chronic lung diseases (including moderate to severe asthma, bronchiectasis, bronchopulmonary dysplasia, chronic obstructive pulmonary disease, emphysema, chronic bronchitis, interstitial lung disease, idiopathic pulmonary fibrosis, pulmonary embolism,

---

[1] Dones-Vargas also contends that he has been diagnosed with a terminal illness, which could qualify as an extraordinary and compromising circumstance under USSG § 1B1.13 Note 1(A)(i). Docket 140 at 4. But because Dones-Vargas does not identify which condition he believes to be terminal and because that condition is not evident to the court, the court examines his medical history under USSG § 1B1.13 Note 1(A)(ii).

and pulmonary hypertension), cystic fibrosis, dementia or other neurological conditions, diabetes (type 1 or type 2), having certain disabilities (such as ADHD, cerebral palsy, birth defects, intellectual and developmental disabilities, learning disabilities, spinal cord injuries, or Down syndrome), heart conditions (such as heart failure, coronary artery disease, cardiomyopathies, or hypertension), HIV infection, immunocompromised state (having chemotherapy or a solid organ transplant), mental health conditions (having mood disorders, including depression, and schizophrenia spectrum disorders), being overweight or obese, partaking in little or no physical activity, pregnancy, sickle cell disease or thalassemia, being a current or former smoker, having a solid organ or blood stem cell transplant, stroke or cerebrovascular disease, substance use disorders (such as alcohol, opioid, or cocaine use disorder), and tuberculosis. *Id.*

The court has reviewed the medical records in this case. Dones-Vargas's medical conditions include gingivitis, broken teeth, being overweight, eczema, antibiotic allergy, a post-COVID-19 vaccine condition, and tobacco usage. Docket 142 at 6, 8, 20; Docket 140-1 at 46. His records also indicate a history of contracting COVID-19 and receiving two doses of the COVID-19 vaccine. *See* Docket 140-1 at 13. Additionally, Dones-Vargas claims that he has bipolar disorder and high cholesterol, although there are no records supporting these claims. *See* Docket 140-1 at 3, 45-46. Thus, Dones-Vargas's only documented conditions listed by the CDC that put him at increased risk for COVID-19 are

7

tobacco usage and being overweight. *See People with Certain Medical Conditions.*

Because Dones-Vargas's medical records indicate that he currently smokes 3 packages of cigarettes a day and has done so for the past 16 years, he is at an increased risk of severe illness if he was to contract COVID-19. Docket 140-1 at 52; *see People with Certain Medical Conditions.* But his medical records do not provide any indication of prior respiratory illness or complications due to smoking. There is no indication in his medical records that he received counseling on his tobacco use or that he participated in BOP tobacco use programs.

Dones-Vargas's medical records show that he is overweight with a Body Max Index (BMI) of 25.2. Docket 140-1 at 58. A person is overweight if they have a BMI of 25 or higher,[2] meaning Dones-Vargas's BMI is just above the minimum for being overweight. *Defining Adult Overweight & Obesity*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/obesity/basics/adult-defining.html (last visited May 31, 2023). Because he qualifies as overweight, this condition puts him at an increased risk of severe illness if he was to contract COVID-19. *See People with Certain Medical Conditions.* On August 8, 2018, Dones-Vargas was counseled on the importance of weight reduction, and

---

[2] BMI is a way to screen for weight categories that could lead to health issues. *Body Mass Index (BMI)*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/healthyweight/assessing/bmi/index.html (last visited July 5, 2023.) BMI is calculated by dividing a person's weight by their height. *Id.*

he was given a plan for exercise, increased water intake, and reducing consumption of foods with salts and sugars. Docket 140-1 at 58.

      Although Dones-Vargas has two conditions that increase his risk of severe illness if he were to contract COVID-19, the court requires a more specific showing of a risk of serious illness from COVID-19 when evaluating compassionate release motions. *See, e.g., United States v. Wright*, 4:16-CR-40083-04, 2021 WL 391605, at *4, 6 (D.S.D. Feb. 4, 2021) (denying compassionate release to defendant with BMI of 35.5, bipolar disorder, asthma, latent tuberculosis infection, and chronic and allergic rhinitis); *Adame,* 2020 WL 7212096, at *3, 5 (denying compassionate release to defendant with BMI of 33.8, asthma, anxiety, and positive case of COVID-19). On January 4, 2022, Dones-Vargas had his vitals checked, and he was recorded as in good condition. Docket 142 at 43. His medical records state there was "[n]o acute distress noted with this encounter. [His] [r]espirations [were] even and unlabored [and] [he was] speaking clearly. [He was] moving in [the] cell with ease[.] [He] follow[ed] directions as [he was] advised. [We] [w]ill continue to monitor [inmate]." *Id.* On May 9, 2022, his medical records state that the FCI Oxford staff "instructed [inmate] how to obtain medical, dental, and mental health care." Docket 140-1 at 34. Thus, the court believes Dones-Vargas's medical conditions are appropriately managed at FCI Oxford, and the court is not convinced that his health conditions prevent him from providing self-care in a correctional facility setting, nor does the court believe his medical conditions amount to extraordinary and compelling circumstances.

Additionally, the COVID-19 pandemic alone is insufficient to warrant early release. The BOP has made significant changes to correctional operations since the pandemic started in early 2020. *See COVID-19 Coronavirus*, Fed. Bureau of Prisons, https://www3.fed.bop.gov/coronavirus (last visited July 13, 2023). These include sanitary and safety measures, restrictions on movement, and visitation restrictions, among others. *Id.* The BOP has also transferred many thousands of inmates to home confinement. *Id.* Since March 26, 2020, 53,374 inmates have been placed in home confinement. *Id.* These measures have increased opportunities for social distancing and reduced the strain on BOP resources.

The BOP's vaccination program for staff and inmates is another protective measure warranting consideration in this stage of the COVID-19 pandemic. *Id.* The BOP has implemented a COVID-19 vaccination plan to protect inmates and staff and limit the transmission of COVID-19 within the facilities. *Id.* FCI Oxford has 572 inmates that have been fully inoculated for COVID-19. *Inmate COVID-19 Data,* Federal Bureau of Prisons, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited July 12, 2023.)

FCI Oxford has taken appropriate steps to engage against the spread of COVID-19. There is currently 1 positive inmate for COVID-19 at FCI Oxford. *Id.* There have been 0 deaths as a result of COVID-19. *Id.* This persuades the court that FCI Oxford has acted appropriately to treat inmates who do contract

COVID-19. The court believes FCI Oxford will continue to appropriately treat inmates who do so.

In October of 2020, Dones-Vargas contracted COVID-19. Docket 140-1 at 13. After recovering, he received 2 doses of the COVID-19 vaccine. *Id.* On April 29, 2021, when Dones-Vargas received his second COVID-19 vaccination, he states that it "immediately" resulted in muscle cramps at the injection site in his left arm. *Id.* Dones-Vargas stated that the muscle cramping spread throughout his body. *Id.* He stated he did not seek medical attention until August 27, 2021, because he "believed it would go away on its own." *Id.* Although Dones-Vargas states that this side effect resulted in him refusing the vaccine booster, the court still finds that the BOP's efforts to limit the spread of COVID-19 and protect inmates appear to be working. *See* Docket 140 at 5

In light of the above, the court finds Dones-Vargas's medical conditions do not clear the high bar necessary to warrant compassionate release for "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i).

**B. Family Circumstances, Note 1(C)**

To justify compassionate release under the family circumstances category, USSG § 1B1.13 Note 1(C), the defendant must demonstrate one of the following: (1) "[t]he death or incapacitation of the caregiver of the defendant's minor . . . children" or (2) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." The BOP's Program Statement on U.S.S.G. 1B1.13 Note 1(C)(i) states,

11

> For these requests, "child" means a person under the age of 18 and "incapacitation" means the family member caregiver suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child. In reviewing these requests, BOP should assess, based on the information provided, whether release of the inmate to care for the inmate's child is in the best interest of the child.

U.S. Dept. of Justice, Federal Bureau of Prisons, Program Statement, No. 5050.50 (Jan. 17, 2019), *as distributed at* https://perma.cc/98YN-KRQX.

Dones-Vargas claims that one of his children, DDV1,[3] is traumatized after witnessing the murder of his mother and that DDV1 "really needs him." Docket 140 at 5. He states in his motion for FSA relief that DDV1 currently lives with a family friend. *Id.* The burden is on Dones-Vargas to present evidence that he is the only available caregiver if he wishes to be granted compassionate release. Dones-Vargas provides no evidence that DDV1's caregiver is incapacitated nor is there any record of DDV1's trauma.

Dones-Vargas contends that his other children also "really need him." Docket 140 at 5. Dones-Vargas, however, does not provide any evidence to support his contention. Because he provides no evidence of this claim or of the children's current living situations, the only information available to the court is Dones-Vargas's Presentence Investigation Report (PSR) from 2018. *See* Docket 82. At that time, DDV1 lived with his maternal grandmother. *Id.* ¶ 59. ODV1 and ODV2 were given up for adoption after their mother's arrest. *Id.* ¶ 60. ADV2 and ADV3 were placed in South Dakota Department of Social

---

[3] Because Dones-Vargas's children are all minors, the court will refer to them only with their initials and, where necessary to differentiate between children with the same initials, a number.

Services custody. *Id.* ¶ 62. DDV2, KDV, and ADV1 were living with DDV2's great aunt. *Id.* Dones-Vargas's oldest child, OYD, lives in Puerto Rico with his mother. *Id.* ¶ 58. Dones-Vargas has failed to demonstrate that the caregivers for any of his children are incapacitated. Thus, Dones-Vargas does not qualify for release under the family circumstances category.

### III. Dones-Vargas's Sentencing Factors Further Demonstrate Compassionate Release Is Not Warranted.

The 3553(a) sentencing factors further show that compassionate release is not warranted. *See* 18 U.S.C. § 3553(a). Dones-Vargas was found guilty of conspiracy to distribute a controlled substance and of possession with intent to distribute a controlled substance. Docket 114 at 1. The PSR outlines numerous instances indicating that Dones-Vargas was regularly receiving large amounts of methamphetamine through multiple individuals from California, Kansas, and Vermillion and Sioux Falls, South Dakota. Docket 82 ¶ 9-15. At Dones-Vargas's trial, a witness stated that she observed Dones-Vargas selling methamphetamine to over 30 individuals. *Id.* ¶ 8. The witness stated that Dones-Vargas sold methamphetamine in smaller quantities when she initially met him, but as time went on, he sold the substance in larger quantities. *Id.* Dones-Vargas had a storage unit rented under another individual's name, in which the witness saw 3-4 pounds of methamphetamine along with U.S. currency. *Id.* ¶ 9. She stated that she observed Dones-Vargas in possession of approximately 4 pounds of methamphetamine when they were in Vermillion, South Dakota. *Id.* ¶ 10.

Additionally, an individual testified that he participated in a transaction as a translator for Dones-Vargas. *Id.* ¶ 11. The individual testified that he was contacted by Dones-Vargas every two days to arrange drug transactions. *Id.* The individual stated he also saw Dones-Vargas receive stolen firearms in exchange for methamphetamine. *Id.* Two individuals also testified that they made multiple trips to transport 7-10 pounds of methamphetamine for Dones-Vargas from California to Kansas City, Kansas, between 2013 and 2014. *Id.* ¶ 12-13. An individual additionally testified that there were multiple occasions when he met with Dones-Vargas for drug transactions in Sioux Falls, South Dakota. *Id.* ¶ 15. The court also found that Dones-Vargas knowingly maintained a residence for the purpose of distributing methamphetamine. Docket 115.

The total offense level was 38 and Dones-Vargas was in criminal history category 1. Docket 130 at 51; Docket 82 ¶ 48. This resulted in an advisory guideline range of 235 to 293 months in custody. Docket 130 at 51. The court sentenced Dones-Vargas at the bottom of his guideline range to 235 months in custody. Docket 114 at 2. After further consideration, the court concludes Dones-Vargas's sentence of 235 months is still appropriate for the seriousness of the crime to which he was found guilty.

## CONCLUSION

Dones-Vargas has failed to satisfy the requirements for the extraordinary and compelling reasons standard. Thus it is,

ORDERED that the defendant's motion for relief under the First Step Act (Docket 140) is denied.

Dated July 17, 2023

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE